And the first is numbers 10-4189 and 11-1462. Birdman, the Office of the Governor, Bureau of the Internal Revenue, United States of America. Mr. D'Aruzzo, Ms. Tepper, and Ms. Rubin. Good morning, Your Honor. Joseph D'Aruzzo on behalf of the petitioners and the appellants in the incident case, and together with me is Mitchell Furse at counsel's table. I'd like to reserve five minutes for rebuttal. All right. At the outset, the question is, you paid taxes for 2006, or the appellants did, to the United States. Is that right? And perhaps some of that, or it looks like some of that may have been owed to the VI. All of that. Or all of that. So the question is, you're saying, well, there's a sort of Damocles, and the VI says it's owed to them, but has the VI ever come after any of the appellants or told them that they owe this in any way? It's my understanding, yes. They have sent them actual notices, the notices that one gets when one issues, and let me back up. If one files an income tax return with a tax authority, be it the IRS, be it with the Virgin Islands, and one, let's say, doesn't include a check with their payment, with their tax return, you'll get a notice, a computer-generated notice from the tax authority that says, you owe a certain amount, and in addition, because you have underpaid, you failed to pay, you're assessed interest or failure to pay. They've received that letter? It's my understanding, yes. We're on the record as saying, yeah. All right. Joint appendix 251, 252, through 256. Thank you. Okay, and what does it say? For example, on page 255, this is the, lack of a better term, the bill to Mr. Hirsch, where it shows the amount that he reported on his income tax return and the amount that he reported as a credit on his income tax return, but then there is a mathematical adjustment because that credit, the money that was. No, is this, I'm talking about, is the letter from the VI to any of the appellants saying, you have, you owe us money for 2006, you haven't paid it, and you owe it to us now? Yes, specifically on 255 on the bottom right-hand side, the amount you owe to Mr. Hirsch, 2.85. I'm sorry, the amount you owe to Mr. Hirsch? I'm sorry, from Mr. Hirsch to the Bureau of Internal Revenue. It was issued from the VI Bureau of Internal Revenue to Mr. Hirsch, telling Mr. Hirsch that he needs to pay the Virgin Islands $2.85 million. And if they attempted to collect that, other than that? To my understanding, no. To my understanding, no. And there's a possibility, it looks like, based on your claim that there's this informal agreement, that they may never attempt to collect that, is that correct? That's what it looks like. I would say that's the natural conclusion that one makes based on the sworn testimony of the current director of the Virgin Islands Bureau of Internal Revenue and the chief legal officer. So if they never attempt to collect it, how is this case ripe for a decision at this point in time? Well, Your Honor, just because the Virgin Islands never attempts to collect it is not accruing additional penalties for failure to pay additional interest. It's my understanding that when you have a self-assessment, which is what you have when you have a 1040 where you self-report a certain amount that is due and owing, the tax authority can go out and issue a lien and levy upon an individual's bank account, so to speak, in order to collect that. There are a lot of provisions of the code that allow for the government. And what's the time period they have within which to do that? Ten years. But, of course, they haven't done that yet. No, they haven't attempted to do that yet either. Not to my knowledge, no. All they've done is issued this bill and then sat back on the sidelines as the IRS and my clients are proceeding to duke it out, so to speak. Tell me if I'm correct that normally if you're living outside the VI or you have a certain percentage of income in the VI and a certain percentage of income that you think is not VI-related, you're supposed to pay what you perceive you owe to the VI to the VI-BIR and what you perceive you owe to the government to the internal revenue. Is that correct? That's correct. Under Code Section 932, there is, for those that owe, if you have Virgin Islands source income or income that is effectively connected with a Virgin Islands trade or business, you owe tax on that income to the Virgin Islands and that the actual tax itself is computed under 932B. And typically for individuals, you file Form 8689. Obviously. Now, that leads to the, you know, sort of the dumb question is, why wasn't that done here? Why didn't you pay the 80 percent, I think, that was claimed to be owed to the VI to the VI and the 20 percent to the government? Why did you pay all of it to the government? I would say it was a simple mistake on behalf of CPAs that weren't particularly well-versed in the mirror code and how it works. If I was preparing the return, I would have had them send it directly to the Virgin Islands. But unfortunately, CPAs, just as a matter of course, they see a bill, they send the check,  So it's a matter of professional negligence. To a certain extent, I would say, yeah. Why can't your client get a full recovery through that avenue? Even if once you've got damage, I mean, at this point, they may claim that there's no damage even done because you haven't had to pay a dime yet to the VI. Well, I would say that the damages continue to accrue. And to answer your question, Judge, I would say that at a minimum, a party has the obligation to mitigate those damages. I can't go and reach any type of professional malpractice against the CPA until I try to mitigate those damages. And I have to mitigate them in the first instance by trying to recoup the monies from the IRS. Or you just make the duplicate tax payment, then file an action for refund, and then you get the money back, and then you hand a bill to the professionally negligent CPA for your transaction costs in getting your money back. If you don't get your money back. I guess that that's a possibility. However, that assumes, one, that my client's just having an additional $2.8 million plus back interest and failure to pay penalties that they can just pay the Virgin Islands, then at that point seek to get the money back from the IRS and depending on what may or may not happen to the course of litigation with the IRS, then at that point sometime down the road, seek some type of recourse or compensation back from the CPAs who... Has demand been made on the negligent party to advance those funds? To my knowledge, no. We have not made demand on the CPAs to advance that fund, no. And it would be premature to do that right now, right? That's my position. We have to mitigate our damages, and I would say that we need to get the money back from the IRS, or the IRS, they can cover the money over, they can remit the money to the Virgin Islands, or the Virgin Islands, they can seek the money and ask that the IRS send it down to them, which I would submit is what should have happened here. The IRS should not hold on to the money and then... Do you have any indication that that's not going to happen? I mean, I guess maybe they're busy, but... I mean, do you have any inkling as to why they wouldn't do that? Eventually, when your file eventually gets to the top of the pile, why they wouldn't send the money over to the VIBIR? Well, it's my understanding that the reason that they're not sending the money down to the Virgin Islands is because the IRS contests that my clients were bona fide residents, that their income was sourced even if the Virgin Islands were effectively connected, and that they were entitled to the program credit under Code Section 934. What this Court needs to be made aware of, though, is that this is for calendar year 2006. This is a post-Jobs Act case. After 2004, the residency rules changed. Starting calendar year 2005, they were explicit, and Mr. Bergman and Mr. Hirsch for calendar year 2005 satisfied the 183-day residency requirement as required by the Code by 937 and the regulations that the Treasury Department issued. Notwithstanding the fact that they spent more than 183 days on St. Thomas, the IRS still claims that Mr. Bergman and Mr. Hirsch were not residents, and they're forcing us to litigate these core issues of Virgin Islands taxation, residency, source, effectively connected income, whether the 934 credit was appropriate, whether they complied with the EDC program, not in the District Court of the Virgin Islands before a judge and a jury who understands what's going on in the Virgin Islands and not appealable to this Court, but before the Southern District of Florida, appealable to the 11th Circuit. And I believe the transcript that I attached to the petition shows where Judge Huck didn't understand how is it that he is going to have to preside over a case over Virgin Islands residency. As you can imagine, as a trial attorney, some of the evidence that I would like to elicit might be something like this. I drove from the East End out by Red Hook, past Frenchman's Reef, past Antilles, along the waterfront, and then I remembered that I forgot my WAPA bill. Now, to me, who lived on St. Thomas, and to Judge Gomez, who lives on St. Thomas, and to a Virgin Islands jury, that makes perfect sense. You know where Red Hook is, you know the Frenchman's is the married hotel where people stay, you know where Waterfront is, you know WAPA stands for the Virgin Islands Water and Power Authority. I don't need to go into any of this. It makes perfect sense. However, if I have to try this case on Southern District of Florida, I have to define and maybe present a map. Where is Red Hook? What is Frenchman's Reef? What is WAPA? Why do we drive on the left-hand side of the road? It doesn't make sense to have this case decide. The case is now back in the VI. I mean, it went to Judge Gomez. It was Southern Florida, and the judge there said, send it back. So the claim now is what? Well, under Judge Gomez's view and his opinion, he's still of the mind that the case needs to be sent back to the Southern District of Florida because the title. You're talking about the mandamus appeal now? Yes, I'm talking about the mandamus appeal. Before we get to that one, let's stay back on the first one. In the merits case, you filed a motion to file a supplemental appendix to put into evidence an informal agreement between the IRS and the VI-VIR. Is that correct? That is correct. And you believe that the informal agreement is what? I believe the informal agreement is this. I believe the IRS came down and said, you are going to play ball, Virgin Islands. And you're going to play ball. You're going to let us do whatever we want. And as a result, we'll let you keep any money that you already got. You're not going to have to refund a single dime. But the IRS will audit, and they'll do whatever they do, and you just stay out of it, notwithstanding the fact that if the IRS determines that an individual was not a bona fide resident, their income was not sourced or effectively connected in the Virgin Islands, they never should have filed with the Virgin Islands in the first place, and they never should have paid tax. But so let's assume that agreement does exist. How does it play into this case? How does it harm your client? I mean clients. They paid what, a total of what, $5.7 million to the IRS? Correct. And purportedly 80% of that's owed to the VI. The VI hasn't come back to where we started. The VI hasn't come back after you. And the agreement is the U.S. government let us go forward. You stay out of this. Okay? If the VI is staying out of this, that's probably good. So you've paid, in effect, 100% of the monies that you perceive were due in 2006. It's just that you paid them to someone that you're hoping will remit a portion of it to the VI, but maybe they have an agreement with the VI that the VI is not going to get any part of it because they're already getting to keep what they previously had from other taxpayers. What is that of interest to you? Well, Your Honor, I'll put it this way. My clients, through the EDC program, have a contract with the Virgin Islands government. That contract, the quid pro quo is you move to the Virgin Islands, you establish business here, and as a result, we will, if you comply with the terms of the agreement, you will get income tax credits pursuant to the Internal Revenue Code, pursuant to 934. This agreement, which I believe is irrefutable, this evidence, is that the Virgin Islands government has effectively undercut the very agreement, the very offer, the quid pro quo, the inducement in order to come to the Virgin Islands, and has allowed the IRS. But here's the problem. The word contract was never noted in your complaint. Nowhere in your answer is the Judge Gomez's repeated questions about what cause of action did you have. So any claim that you might have relating to contract or quasi-contract arguments, aren't those waived? I would say no, Your Honor. I would say no because in reference to the... I mean, you've got to put them somewhere, right? You've got to bring them up to the district court for it to decide. Well, that's true. But I believe the transcript was we were specifically asking for a negative injunction, a source determination as to whether... You need an underlying cause of action, though. You can't just say I need an injunction. You need a cause of action. And, in fact, in response to Judge Gomez's questions, he's saying, you know, what do you want, a negative injunction, what is that? And you go, well, it's a cause of action and a remedy. Well, that can't be. Well, I would submit, Your Honor, based on the limited information that we had because, by definition, a sobriety agreement is not available to the public, if I had known... No, no, you're saying you have an agreement with the VI and somehow you want a...that's a contract. But if you don't mention it in your complaint and in response to a number of questions by Judge Gomez, you say, hmm, it's a cause of action and a remedy, which it can't be, how are we to conclude other than you've waived those particular arguments? Well, Your Honor, I would say that wavering in this context... Roberto, add five more minutes, if you would, please. I would say wavering in this context, the court has to take a step back and take a look at what I knew and what I could reasonably have pledged at the time. I was not aware of what the improper dealings were. I actually...I knew there was something going on, and I put that on page two of the complaint. I actually, in quote, improper dealings. I knew what was going on. I heard it on the screen, St. Thomas. But I just can't plead that because what I heard from a friend of a friend, you know, I didn't have the goods, so to speak. But once I had the goods, like I have now, I can rationally articulate it. But at that point in time, I just was not in a position where I could fully articulate as well as I would have liked, admittedly, the facts and the circumstances that I normally would have. Normally what you do in that case is, well, you've got a decision, but, I mean, beforehand you would have moved to amend. I mean, I perceived that what Judge Gomez was attempting to do was trying to clarify with you so that perhaps you could set the stage for a possible amendment. But it looks like you didn't take that offer up or that opportunity up. Well, I would say the timeline is Judge Gomez's opinion came out before I took the deposition. I took the deposition about this time last year. And Judge Gomez's opinion... No, no, no. I'm talking about you're saying you have a contract that exists between your clients and the VI. That wasn't discovered in the deposition last year. What was discovered in the deposition last year was that you believe there's an informal agreement between the VI, BIR, and the IRS, right? But that's where the breach goes to the contract. That's where the breach is, Your Honor. Okay, wait a minute. Let's do breach of what and how are your clients harmed? Okay. There is a contract between Four Points, the EDC-approved beneficiary under Virgin Islands law with the Virgin Islands government in order to provide Four Points and its partners benefits, specifically Code Section 934 tax credits. The breach was the agreement between the Virgin Islands, BIR, and the IRS that... And what gives you the right as a third party to try to enforce that informal agreement? We are not a third party. I would say we are the intended beneficiaries, and that's because under Virgin Islands EDC law, actual individuals are not able to become beneficiaries. You need to form a Virgin Islands entity, usually a LLP or an S-Corp, a Virgin Islands entity that that entity is then approved by the Virgin Islands Economic Development Commission in order to get benefits, and then it's the partners of that entity that then get the 934 credit. If Mr. Bergman and Mr. Hirsch were allowed to become actual EDC participants... You believe should come back to your clients by virtue of a credit under the 934 program? Or what? Or do you think it should be remitted? It should be remitted, but in this whole context, Your Honor, what the IRS has viewed is that the way the structure works is this. You have Four Points, then you have the entities that are Virgin Islands C-Corporations. Those Virgin Islands C-Corporations file and pay taxes to the Virgin Islands, and they, because they are residents of the Virgin Islands, also are entitled to the 90 percent credit. Then you have Mr. Bergman and Mr. Hirsch, who own those Virgin Islands C-Corps, and because they were bona fide Virgin Islands residents, they too were entitled to the 90 percent credit. The IRS is attacking the entire structure... But is there any amount, do you believe, that should come back to your clients as a credit against the $5.7 million that they have currently paid? No. There's no credit because for calendar year 2006, they were not bona fide residents. Final question. At one point, you made an unjust enrichment claim. Is that right? I believe I did say that to Judge Gomez, yes. So how can you make... An unjust enrichment claim means that somebody has money in their pocket more than they should have, and therefore they should have restitution to you for the monies that they have in their pocket that otherwise belong to you. That party would be the VI, would it not? Yes, it would. And if the VI doesn't have the money in his pocket, how can you conceivably have an unjust enrichment claim? But they do have the money in the pocket, and they do have the money because... The IRS has given some portion of the $5.7 million back to the VI? No. The two entities, Kingsbridge and Barclay, those are Virgin Islands entities that pay tax directly to the Virgin Islands. But is that what we're... Wait a minute. Are you saying... Are we talking here today about the $5.7 million, or is there additional monies that Barclay's and Kingsbridge paid out that is also involved in this? Is that additional to the $5.7 million? Yes, it is. However, the...  How much? I mean, you've lost me. I understand, Your Honor. If I may. The money that was paid to the IRS was paid by Mr. Bergman and Mr. Hirshheim, their individual personal tax liabilities, as articulated in Form 10-4. Okay. That's the personal? That's the personal. Barclay and Kingsbridge filed 1120s. They filed those 1120s with the Virgin Islands Bureau of Internal Revenue and paid tax to the Bureau of Internal Revenue. And is that the tax that they owe to the Virgin Islands Bureau of Internal Revenue? That is the tax that those two entities... So how is that unjust enrichment? Because the agreement between the IRS and the Virgin Islands is stating that for the money that the Virgin Islands agrees with the IRS is not sourced in or effectively connected with the Virgin Islands trade or business, that money, instead of being sent to the IRS, instead of being kept with the IRS, that is being improperly kept by the Virgin Islands. And in this case, that's the money that Barclay and Kingsbridge paid directly to the Virgin Islands as Virgin Islands C-corporations. So what's that got to do with unjust enrichment? Did they pay too much to the Virgin Islands? If the IRS is correct that none of this income was Virgin Islands-sourced or effectively connected, Barclay and Kingsbridge never should have paid a single dime. Has anybody said that that's the case? No. Other than the IRS. The IRS has intimated, but the IRS won't actually come out and tell me other than this is all we don't like the structure. We don't think that Mr. Bergman and Mr. Hirsch were bona fide residents. We don't think that their income was sourced or effectively connected into Virgin Islands. And as a result, the income and the tax was paid by Barclay and Kingsbridge. Can I ask you, what kind of relief are you seeking against the Virgin Islands BIR then? I would like them to issue a source determination. The Virgin Islands Bureau of Internal Revenue and the VI government tells its taxpayers pursuant to this program what income is VI-sourced, what income is effectively connected with the Virgin Islands. For 2006. Yes, for 2006. And are those, is that income, is it eligible for the credit under 934? Or can the United States at any point in time come in after the fact, disagree with the taxpayer, disagree with the Virgin Islands Bureau of Internal Revenue, and keep the money and assess additional tax penalties and interest? If the Virgin Islands Bureau of Internal Revenue says, you know what, taxpayer, you're right, well then, I want to know you're right. But if you're not right, well then, fine, we're not right, and you shouldn't have had the money in the first place. And the IRS, well, I guess the IRS, you're right. We're put in a proverbial whipsaw between these two governments who seem to have some type of backdoor agreement, and the person that's caught in the middle are the taxpayers that were induced to move to the Virgin Islands in order to take advantage of this development program credit. On the document that you cite on pages 251, 252, 255, and 256, what's the date of that document? April 30th, 2008. And they've made no attempts since in the last three years and nine months to follow up on that? That's my understanding. Okay. Let's hear from Ms. Tepper then. Thank you, Your Honor. Good morning, Your Honors. My name is Pamela Tepper. I represent the government of the Virgin Islands. May it please the Court. Let me ask you, do the appellants owe the VI taxes for 2006 right now? Yes, Your Honor. They do? Yes, Your Honor. How much? Approximately $2.7 million for both the Hersh's and the Birdman's, in addition to fines and penalties that have been assessed. Fines and penalties. But you haven't attempted in nearly four years to try to collect that, is that correct? Not at this point, Your Honor, no. And why is that? My understanding is that because of the lawsuits going on, they haven't made any attempts to collect the money. But you know where the money is, right? Meaning? You know that the monies were paid in 2007 or so to the IRS? Meaning they were improperly paid to the internal? Improperly paid to the IRS, right. And so why don't you get the money back from the IRS and go home? We don't have a lawsuit. You're not here today. And it's a lot nicer where you are than where we are. That is true. Your Honor, there's a couple things that I think we need to kind of take a step backward and understand, I guess, the process. Number one, they've admitted that they're not bona fide residents of the U.S. Virgin Islands for the tax year 2006. At this point, the cover-over provision, which they are attempting to say that the IRS should turn over monies to the Virgin Islands Bureau of Internal Revenue, they're attempting to say that that should kick in. It doesn't. They are two separate taxing entities, meaning the Virgin Islands. But under 932B, they're supposed to have split it, and they didn't. Correct. So the IRS got more than it should have gotten, and some portion of that should have come to the VI. Why don't you just settle up with the IRS? What am I missing here? What we're missing here is that's not what the law says in that. Wait a minute. It's almost like, you know, the classic interpleader. Right. It's like, okay, the IRS would normally say, I'm holding this. I don't know who it belongs to. It belongs to VI, or we have to give it back to the appellants. You figure it out. And you're saying it belongs to you, and my guess is the IRS will decide that Ms. Rubin agrees. At some point, it does. And then the trouble is they get whipsawed because they paid the wrong party a portion of the 5.7, and you're saying at some point in time there's going to be all kinds of penalties and assessments and interest because they paid the wrong party. I mean, that sounds like the classic catch-22, doesn't it? It's a challenging position, Your Honor, to be in. The problem is at this point is that the obligations are from that of the taxpayer to pay us. As the Court said earlier, and I'm in complete agreement with what the Court said, in that it appears that there could have been two checks written. We wouldn't even be here to start with. Everybody understands that. But there's an easy out, and no one seems to want to take the easy out, and that's what I can't understand why that wasn't done. What law prohibits the Virgin Islands BIR and the Internal Revenue Service from sitting down in a two-hour meeting and sorting this thing out and solving the problem? Might not even need a meeting. Probably could do e-mails. Your Honors, I appreciate what everyone is saying, and perhaps that is something that could happen. It hasn't happened. But why? Your Honor, I can't answer that question other than to say it hasn't happened. I don't know other than the fact that you've got your adversary saying something nefarious is going on. Does it make a whole lot of sense? First of all, there's nothing nefarious going on. Second of all, I think that the court needs to take a step back in that what we're here for is a 12B6 motion, essentially. There's been evidence presented to this court that was not considered by the district court judge. They filed a supplemental appendix to which we objected to. We filed a motion to strike. They had depositions after the fact in a completely different case. Let me just stop you for a minute. I understand what you're saying. Is there anything stopping them from refiling with maybe more specific allegations? Can they refile this lawsuit? That would be their choice. I mean, as the court also said, which, again, I was surprised to see. They could have amended their complaint during the time period that the motion to dismiss was filed. But nothing was done. So we have a situation here where we have to essentially look at the four corners of the document. They have an alleged cause of action against the Virgin Islands government. They owe us the money. I appreciate everything that the court is saying at this point. The problem that I have is we have all this after-the-fact evidence that wasn't considered by the district court, by Judge Gomez, and that's the problem. So your position is you want to win the case and forget solving the problem? Your Honor. I mean, we do have to apply facts to law, and you're quite correct. In a 12b-6, there's a standard that we apply to the documents. But I think you can appreciate why the panel is scratching its collective head as to why there's not some fairly ready solution at hand if people will just get together and talk about it. We can find you a conference room in this building while you're all here if you'd like. Or are we just going to create make-work for everybody and have this go on for the next three years? I don't personally, speaking for myself, I don't understand why we would do that, why any of us in this room would do that. I completely appreciate and respect what the court is saying. Unfortunately, right now, for what we have before us, it's a very limited issue and a limited question. And as I've said earlier, the fact that the issue at this point is whether in 2006, whether the taxes that were owed to the Virgin Island government were paid, and the answer is no. They weren't bona fide residents. And they've asked you for a declaration as to that the income in question is derived from the VI and not the United States. Have you ever given them that determination yet? To my knowledge, no, Your Honor. And why is that? At this point, what's been issued are reminder letters from the Internal Revenue Bureau. There's been a mathematical recalculation letter that was issued. I can't speak for what happens under the 934 program. You would give to the taxpayer a determination of how much you think is owed to the VI, or is VI sourced, excuse me, and how much is not. That's normally done, right? Yes, sir. Why was that not done here? Your Honor, I think part of the situation is that the case was filed. The motion for dismissal was granted. They just haven't, you know. But at some point, when do you normally do that? 2007 for the 2006 taxes? I mean, in order for them to pay the 2006 taxes as they should, when do you make that determination in most cases? Your Honor, I don't think there's a particular time period in which the Virgin Island. Well, then how do they know how much to pay the VI and how much to pay the government? Because, in effect, if they don't know how much to pay the VI, I guess they could make their own determination and see if that flies. But, Your Honor, the determination as to what is owed hasn't been challenged by the government of the Virgin Islands, in that we've accepted their assessment, and nobody in the Virgin Islands has challenged that. Was that official, or you just haven't done it yet? Official in what sense? Was that going to be, are you conceding that as an issue for all time, that the dollar amount is good and nobody has to worry about that? Well, that's something that appears from the documentation, that the Virgin Islands agrees that the $2.7 million collectively is owed by both the Hersh's and the Birdman's. And that hasn't been challenged at any point. The point is there's not really a whole lot of communication, so maybe they don't really realize that that's the final amount. Maybe they're waiting for the other shoe to drop to see exactly. Maybe they're waiting for something formal to tell them that. Well, no, Your Honors, that's not correct, because there was a notice issued where there was a recalculation, a mathematical recalculation that was issued by the Virgin Islands government. If I'm a taxpayer and I'm a participant in the 934 program, and I also have income in the United States, in order to know what I owe you, the VI, don't I need to have a source determination from you to me? Not necessarily. The question is, do we disagree with what you filed? And the answer to the question in this instance is no. We've agreed that they have stated the percentage of their – So, in effect, de facto, you've agreed as to the source determination that they've come up with? We're not challenging what they owe to us as income derived from Virgin Islands businesses. Okay.  The money was paid for. Was it in Washington or somewhere? Somewhere. By the government? And have you made a request to the government for that? To my knowledge, Your Honor, I do not have any formal documentation regarding that. Have you made any request to the government for that? Your Honor, I don't have any formal documentation. Do you have any – do you know of any informal agreement with the government as to – or have you made any informal request to the government for that? Your Honor, not to my knowledge. It is not something that was, again, presented before the court. Our arguments and our presentation is limited to the forecourt. And I appreciate what the court has said. I understand it's a little frustrating. You turn to your right and ask the lady next to you, you know, what about this? Apparently you haven't done that. We – there has been communications between myself and Judge Ambrose. Well, that's what Judge Ambrose just asked you, I think. Is there an informal request having been made by the VI to the government to give the $2.7 million? Your Honor, it's my understanding that there's more to the equation than that with regard to the Internal Revenue Service. As to what the Internal Revenue is holding that you think belongs to you, have you made an informal request of the government to give that money to the VI? Your Honor, at this point I do – I believe that there has not been a formal request. Informal request. Excuse me, informal request. That is my understanding. My understanding, in addition to that, is that there are other issues that the Internal Revenue Service has with the Birdmans and the Hershes, which do not include us. Why – I'm getting more and more lost as we come in here. You say that you don't believe that there's been an informal request made by the VI to the government to give you back the $2.7 million that you think is owed to you based on the source determination that you agree with that the parties filed when they filed their tax return, correct? That's correct, Your Honor. And do you anticipate that ever happening in our lifetimes? I would hope so. And to be very candid with the Court, I think that this is probably a real good case for mediation, and that's something that I think that we need to consider in this matter. Usually what happens when cases come here, it's a request to the parties to mediate. Was that request made? No, Your Honor, not at this juncture. Okay. If there's been no informal – I mean, I can sort of hear what the IRS is going to say. If there's been no informal or formal request made to the IRS to give the money back, why would they give the money back until somebody makes a request of them? So it sounds like the reason, if I had to take a guess, or your opposing counsel would say, the reason there hasn't been a formal request made or informal request made or any request made is because there's this informal agreement between the IRS and the VI that the VI just stays out of all this stuff completely, period. That's it. Is that right? Is that the allegation that's being made? That's the allegation being made. But, again, Your Honor, we're going – and, again, I don't mean to be disrespectful with what I'm about to say. We keep going beyond the record, and I appreciate everything. But they're between a rock and a hard place, and they need to find a way out. They've paid by the mistake, they're saying, of their accountants. They paid the right amount to the wrong party. The IRS deserves what sounds like $3 million of the $5.7 million. You deserve $2.7 million. And they've given it to the government, and they're now saying – and then they get this letter from you saying, you owe us this money, you haven't paid us. And they said, yes, we did. We paid the government. Have them give it back to you. They'd rather not pay $2.7 million plus interest and penalties to you and then be out. I mean, you can understand where they are. If you were in their position, it's just dollars and cents, and that's a lot of money for an individual. I understand that, Your Honor, but they did have an option. They could have filed a refund action, and they didn't. So there were things that could have been done by the taxpayer that was not done. And, again, I appreciate everything that the court is saying. Unfortunately, when the 12B6 motion was granted, there was no discovery. Nothing had occurred. We were dealing with the four corners of the document, which is, is there a cause of action against the government of the Virgin Islands? And the answer is no. And that's really what the case is about, except for the fact I understand what the court is saying. We're dealing with basically a complaint, and that's it, and that's all that was filed. Were you alleged in your brief that the appellants are trying to enjoin the VI from collecting taxes? Is that still your view? That the VI – I'm sorry. That the – you alleged in your complaint that the appellants are trying to enjoin the VI from collecting taxes. Is that still your view in your brief? Right. In their attempts, they have requested an injunction. And, you know, at this point, they haven't, as they've alleged to the remedy. Is that still your view? They have made attempts to do that. Yes, Your Honor. So you – that's not my reading at all. My reading is they want your declaration that the incoming question is derived from the VI. They want a source determination. But it sounds like what you're saying here, on the record, at least twice, is that you accept their divvying up, and therefore you accept their source determination, correct? That's what the documents – that's what the documents suggest that have been transmitted to the appellants. All right. Let's hear from Ms. Rubin. Thank you, Your Honors. Thank you, Your Honors. May it please the Court, my name is Jennifer Rubin, and I represent the United States in this case. And before I turn to the mandamus issue, I think I can clarify the questions that you're asking. And the short answer is the IRS asserts that the Bourbons and the Hershes both owe the IRS far in excess of the amount of money that they paid the IRS for 2006. There have been notices of deficiency issued for tax years 2003 to 2006, and there have, in fact, been deficiency proceedings filed by my opponent on behalf of the Bourbons and Hershes for monies far in excess of this. Far in excess of $5.7 million or far in excess of $3 million? Both, I believe, you know, millions of dollars in excess of that. Go ahead, Mike. To just cut to the chase, are you saying that, yes, according to their calculations, they overpaid, but in reality they owe us that money and probably some more? That's right. So that's why you're not turning over anything to the VI? Right. Because it's yours and you think you even are owed more than that. That's right. And moreover, I'd also note that the tax court deficiency proceedings are basically state at this point because the Bourbons and the Hershes asked for IRS appeals to take a look at the questions and to take consideration of things. So, you know, right now my hands would be tied anyway, but certainly while it is the case of – So if you remitted the money, you'd even be deeper in the hole is what you're saying. That's right. And so while we certainly acknowledge that both the Virgin Islands and the Bourbons and Hershes say that we have money that belongs to the Virgin Islands, we don't agree with that. And is there an administrative process? You don't care why they paid the money. All you're doing is keeping score and they paid you some portion of what they owe you. That's right. That is certainly our position. Our position is that they owe us money, not them. Is there an ongoing administrative process now with respect to the 2006 return? There is. There's both deficiency proceedings that have been filed and then there's IRS appeals proceedings that are ongoing dealing with 2006 is my understanding. Now, the tax court deficiency proceedings aren't going forward at this moment because of the IRS appeals process. It's just the way the system works. But your adversary has made an appearance in those matters, whatever they are, right? Your adversary is actively involved, right? Yes. My adversary filed both the tax court proceedings as well as deficiency petition, so to speak, in the District Court of the Virgin Islands under the same theory of 1612 that's at issue in this mandamus action. Part of the problem in the past, looking at the big picture, is that there has been some concern by the federal government, and I was involved in one of the other cases, where people are claiming that they have income sourced in the VI when, in fact, it does not appear that that's the case, and there's been a number of audits done by the IRS. That's right. Have these folks been audited? I'm not sure whether it was technically called an audit, but, yes, it resulted in a notice of deficiency, which is what's resulted in the deficiency proceedings that I mentioned. And you're saying it is the basic claim of the IRS that the amounts that they believe are sourced in the VI are, in fact, not sourced in the VI? That's right, the deal with real estate transactions in the United States. And are those matters on hold, or what? In the tax court, they are. There is a motion to dismiss pending in the District Court of the Virgin Islands as to the deficiency proceeding brought there, again, the 1612 issue. If I may turn to the 1612 issue. Why would it be a problem to construe 1612 in a way that conflicts with the general venue statute of 1402? Well, there's several reasons why it would. The first thing is, as the taxpayers here even acknowledge, it would implicitly repeal 1402A, and there's no indication that Congress wanted to do that, and that's inconsistent with many cases, including Merkel's House and regional rail reorganization cases. But there's a reading here that reads all of the language of the statute, that takes all of them into account, leaves nothing superfluous, and is completely harmonious with Section 1402A, which is that the exclusive jurisdiction deals with cases that are properly, quote, in the Virgin Islands, unquote. By doing this reading, it is consistent with the statutory language, it goes with the plain language, and it manages to avoid either rendering the in the Virgin Islands language superfluous or implicitly repealing Section 1402A. We also note that this is consistent with what Congress did in Section 1614B, which was to say that, as a general rule, Title 28 should apply in the District Court of the Virgin Islands. Now so in effect, as I understand, what you're saying is that the words exclusive jurisdiction over all criminal and civil proceedings in the Virgin Islands with respect to the income tax laws applicable to the Virgin Islands really is a demarcation between the territorial courts and the District Court, is that correct? Absolutely. And nothing else? And nothing else. And, you know, that's very consistent with what the language says. It's consistent. While we believe that the District Court was correct not to look at legislative history, given the plain language, legislative history also supports that. But the concern was that given what was going on in 1984 where the Virgin Islands legislature was going to be given the ability to divest the District Court of the Virgin Islands of jurisdiction over local matters, and given this Court's decision in Dudley concluding that the Miracote territorial income tax was a local tax that was being heard in the District Court of the Miracote cases would end up being heard only in the territorial courts. So here's this language that covers that. Can I go back to something else? The panel asked your adversary, actually your co-counsel, I suppose, about any discussions, informal or formal. What is your position on that? Has there been discussion? Has there been any communication at all? Essentially my opponent asked if we would be open to going into mediation. I'm talking about the B.I. Council. B.I. Council. Right. And our position is that they owe us money. No, no, that's not my question. That may be your position. But has there been any discussion between the two government bodies? That was the only discussion that I know of. And what we know is that the Virgin Islands has taken the position in these residents, whereas obviously the IRS has taken different positions saying that these people were not eligible for federal tax exemptions in some cases or were trying to pay taxes to another body that should have gone to the IRS. There is a definite dispute here, a legal dispute. But the usual dispute comes up where they pay the B.I., don't pay you, and you say, hey, you should have paid us. Here they've paid you. They claim they paid you more than you were owed. You're saying, nope, they paid you less than you were owed. And we're doing this ring around the rosy, you know, five years later. It's now 2012 for taxes that were paid in 2007, supposedly for 2006. Right. You know, but I would say as far as this goes, these are complex cases. No kidding. And they are. You know, you have a lot of things to look at. And, you know, under the JOBS Act there's many things to look at. Our problem here, sitting here, is, yes, it's complex now, but maybe it shouldn't have been so complex in being resolved long ago and far away. They paid $5.7 million, and the B.I. says some portion of that goes to us. You say, no, in fact, it all goes to us. And who's going to resolve that? You've got a matter in the tax court. Why don't we just let them resolve who owes what? We completely agree with that. We think that's the proper resolution. But, you know, what happened in this particular case was almost – So should we just, in effect, hold up ruling in this and let this go forward in the tax court, keep it in abeyance, or what? That's an interesting thought. I'm not sure how that would work. I mean, it's a strange sort of situation because normally in refund cases you have to pay 100% of the taxes you owe before you can get into district court instead of the tax court. And, no, that's how it works. Either you challenge your notice of deficiency in the tax court, or you pay everything and you get a refund claim. Because of the way all of this went down and the timing, because a refund action was filed before the notice of deficiency came out, the procedures fit strange. I mean, I think arguably what would really happen in this case is that, you know, it ought to be dismissed because of the full payment rule under FLORA, United States versus FLORA. But, you know, if the court were to – I also am not entirely certain how it would work with the venue problem that's created by 1612. But we're all relying on one set of numbers, which could be completely off, and we're asked to rule on that. Wouldn't it make sense to let the administrative and, you know, the tax process take its normal course? We do tend to think that the deficiency process is where all of this should be decided. I'm just not sure how that operates in connection with this case because what this case is currently about is the procedural problem of the case having been brought, where it was brought and when it was brought. You know, right now we're dealing with where it was brought, that this district court didn't actually have venue over the case. And then the question is – You mean exclusive venue. Yeah, they didn't have venue. Therefore, it should not have been in that court at all. Could it have been in that court? I mean, the court initially said, let's let South Florida decide. South Florida says – kicks it back, right? They only kicked it back for deciding the certificate of appealability that had been filed. Basically, my opponent tried various mechanisms to get the issue of transfer of venue up to this court, one of which was the mandamus action, one of which was also a certificate of appealability for an interlocutory appeal. But that was filed after the case was transferred to Southern District of Florida. Southern District of Florida says, I can't decide that. I need to transfer it back for a limited purpose. Your point is that other courts, with respect to the mandamus appeal, courts other than the VI can hear this case. Is that correct? That's right. Okay. Let me go back to the case on the merits for a second. Is there an informal agreement between the IRS and the VIBIR with respect to the payment and collection of taxes with regard to – of this kind? Not that I know of. And certainly the Virgin Islands has been fighting us in various cases, as Your Honor is aware, such as the Appleton case. So I'm not sure where this is coming from. But even if there were, it wouldn't have any legal effect. I don't know of any mechanism by which the IRS can force the Virgin Islands to pay over funds to a taxpayer, nor do I know of any mechanism by which the IRS can – The informal agreement, as I understand it, that's alleged, is that the VI will step aside and allow matters to be determined or the federal government will, in effect, take over and decide how much taxes are owed to the federal government or to the VIBIR. And usually that happens when monies have been paid to the VI, but in this case it just happens to be the opposite. The monies were all paid to the IRS. As the Appleton case indicates, that doesn't seem to be what's going on. You know, the Virgin Islands is actively fighting in these cases. So I'm not sure why there's this claim. Certainly in Appleton they were fighting, and I believe I dissented in that case. That's right. And there's other cases that they're fighting us on as well in the tax court. There's at least eight. But it sounds like this case, you know, it sounds like your co-counsel or whatever, Ms. Tepper, is coming up, I get the impression she perceives that she's muzzled. I don't know what her perception is, but I would also say that it's not totally clear to me who at the Virgin Islands has the whole picture on the Bergman and Hirsch cases. She had suggested the possibility that maybe this would be a right case, speaking of right, for mediation. Does that make sense to you? Not given the disagreement as to whether this money belongs to the Virgin Islands or the IRS and whether, in fact, the Bergmans and Hirschs owe more money. But let's assume for the moment that you think that more money is owed to you than had currently been paid. But the first thing you have to do before you even get to that is don't you need a source determination as to how much of it's VI sourced and how much of it's non-VI sourced? I would say that the IRS's position is that regardless of what the Virgin Islands says on that, they don't have to accept it. It would not be binding on the IRS in any way. No, but shouldn't there be a determination as a predicate matter, forgetting who does it, as to how much of this is VI sourced and how much of it is non-VI sourced? There has been. So that one can at least begin to determine, okay, this is the, of whatever this amount X is, X percent of this is VI, X percent of this is the government. And then afterwards you just figure out what X is. You're saying that X is not 5.7 million. It should be more than that. Right. And there has been such a source determination made by the Internal Revenue Service in the notices of deficiency issued to the Burmans. And what is the source determination then that the IRS has made? It depends on the year because they did it for 2006. 2006 would basically argue that they owe us an additional, the Burmans owe us an additional 6.4 million. This I'm taking from the complaint that was filed by my opponent in the district court. I'm talking about percentages roughly. It doesn't actually have a percentage, but I believe, I don't have the percentage in front of me, but I know throughout the complaint there's references to source determinations having been made in the notice of deficiency. So there actually has been a source determination made by the IRS. Is the same source determination that's been agreed to by the VI? Not that I know of. You know, the Virgin Islands has certainly taken a more aggressive position on Virgin Islands source than the IRS believes that it should have. But I don't know, as I said, I don't know of any such. Who makes the determination as to source initially? I believe that the process actually works where the taxpayer submits a tax return asserting source and then someone can try to challenge that. So the taxpayer has done it. The VI is not challenging it. You are? We are. And you've done that formally? We have. And there are deficiency proceedings. And that's what's holding up being part of what's being litigated in the tax court? That is exactly what's being litigated in the tax court. It's just stayed while the IRS appeals process works. All right. Any further questions? No. All right. Let's hear from Mr. DeRuzio. Mr. DeRuzio, if you would confine yourself to the mandamus appeal. Happily, Your Honor. I would like to begin with quoting from Danbury v. Lee for Judge Stapleton. This is on the mandamus, right? This is on the mandamus. Let me put it this way. We suggest that the district court provide an opportunity for the United States Commissioner of Internal Revenue to voluntarily intervene or be brought in by one or both of the current parties. If the commissioner joins or is joined, all interested parties can have their rights determined in this suit and avoid unnecessary litigation. This is the exact ring around the rosy that Judge Stapleton was talking about. We have two cases. As it currently is going to play out. But you're litigating it, though, in another court, right? In the tax court. There's a tax court case. I also have a case in the district court of the Virgin Islands. The IRS believes they should go forward in the tax court appealable to the 11th Circuit on key issues of Virgin Islands taxation that's going to be determined by the 11th Circuit. But while my case against the Virgin Islands is going to be decided by the district court of the Virgin Islands appealable to this court, we can have two trial courts having the same trial on the same exact issue appealable to two different circuit courts of appeal. I can't imagine Judge Maris, who this courtroom is named after, when he drafted or helped draft the Revised Organic Act of 1954 could have envisioned that Virgin Islands taxation issues were going to be decided in the Southern District of Florida or the U.S. tax court appealable to the 11th, as in Berman, or Cooper, Huffman, Grogan, to the 8th, as in Coffey, to the 4th, as in McHenry. Just yesterday, I argued with Ms. Rubin before the 4th Circuit Court of Appeal on an issue very similar to Appleton that Judge Ambrose sat on the panel. We are going to have numerous circuit courts of appeal deciding... The McHenry action was identical to the Appleton. The case you're saying that's going to come here and the case that's going to go to the 11th, they're identical? It's the same issue. Well, then, why not... You could just seek a stay in one court, right? The problem is, the way that the IRS is constructing it, I have to battle the IRS in the tax court, I have to battle the Virgin Islands in the District Court of the Virgin Islands, but because all the parties aren't brought together, there's no res judicata. The IRS is going to say that determination in the District Court of the Virgin Islands, it's not binding on us. And as a result, it doesn't matter what happened in front of Judge Gomez, we're not going to abide by it. We're going to take whatever happened in the tax court, and if we don't like it, we'll go up to the 11th. It doesn't matter what the 3rd Circuit says. They've already expressed that, what they've done in Coffey, what they're doing in McHenry, what they're doing in the intervention cases before the 11th Circuit. We are going to have a scattershot approach on core issues of Virgin Islands taxation, and by implication, Virgin Islands' budgetary and fiscal matters. The power to tax is the power to destroy for the taxpayers, but for a government, the power to tax is a power to fund, is a power to provide services, is a power to provide services to its constituents and people. As a result, we are going to have other, for example, the District Court in the Southern District of Florida, deciding issues that relate to the Virgin Islands. As you can imagine, if I'm trying this case... You've got to base it on something. You're basing it on 1612, right? Yes, and... How do you distinguish our opinion in Brow v. Farrelly? Your Honor, the opinion in Brow v. Farrelly did not talk about 1614b. 1614b, the only case that I've seen that talks about 1614b is the Walker v. Virgin Islands. It came out of the trilogy from 2000, which I believe Judge Stapleton also authored. And in that case, the District Court determined that where appropriate, provisions of Title 28 are going to apply, and applied 2253 for certificate of appealability and 2254. But they did not answer the question, when is it inappropriate to apply Title 28? We submit that you have to look to the legislative history of where it's inappropriate. And I'm going to quote here from the legislative history that was attached to Eman Damas's Exhibit 10 on page 23790. I'm looking at 23789, the statement of Senator Weicker. This provision is based on consideration that since the income tax law is applicable to the Virgin Islands of the provisions of the Internal Revenue Code, uniformity of interpretation requires that questions involving the interpretation of these laws be litigated only in the federal courts. We will submit that the uniformity requires the District Court of the Virgin Islands and this Court, not the 11th, not the 4th, not the 8th, to rule. And I would turn the Court's attention to the next page, and I'm quoting here, the second-to-last paragraph. How do we distinguish 28 U.S.C. 1402a? Because that provides that venue for actions like this one is proper only in the district where the plaintiff resides. The plaintiff resides in southern Florida, right? Yeah, but under 1614b, where appropriate. And the determination of where it's appropriate, or better said, where it's inappropriate, and I would quote here, this subsection and its counterparts applicable to Guam and the Northern Mariana Islands would have the effect of making the provisions of Part II of Title 18 and Title 28 generally applicable to all territorial courts. It is intended that in the Virgin Islands the only exception to this extension will be those provisions which are in conflict with specific legislation applicable to the Virgin Islands, 932, 934, the EDC program, the EDC credit. But you look at exclusive jurisdiction over all criminal and civil proceedings in the VI with respect to the income tax laws applicable to the VI. And what do you think our opinion in Braille says? And I realize it deals with 1611 as opposed to 1612. I believe your opinion in Braille was discussing the... It sets the bounds of jurisdictions for territorial courts, right? Right. 1611b? It did. And 1611b addressed in conjunction with 1612b and addressed whether... Basically set up the 84 enactments or revisions to revise... But 1611b basically has the same words as 1612a have, right? No, I don't believe so. 1612a... In the Virgin Islands, exclusive jurisdiction are the same words. That is correct. However, I would take that 16... And that would seem to mean exclusive of the territorial courts, not exclusive of all other federal courts. In addition to jurisdictions... That's the way I read Judge Becker's opinion. Well, Your Honor... I mean... And what it really argues for is... I mean, looking at this case from, I don't know, 10,000 feet or whatever, it seems like, from my perspective, what's happening here is that on the merits, there's this battle going on that we spent a lot of time on, and it seems like what's happening is the VI... I said have a muzzle on. The VI, in effect, is quietly in your corner. I would disagree with that. I understand, but they're not saying much, and they're just rolling over and playing dead, and that there really is a tension between the VI and the government. Put that aside. The question is, who decides it? And under the normal venue statute, it can be decided in the Southern Florida District Court. Normally, yes. And you're saying that there's a special statute, and I'm saying that Browl seems to indicate that what we really should do is say, no, you don't read the statute as you do. You just send this case and let the... It's not necessarily have to be decided in the VI in the Third Circuit, period. It can be decided elsewhere. And I would say that will conflict with the plan... I understand what you're saying. Yes. But... It's an issue of first impression for this Court, absolutely. But we will submit that it... And you realize just from a purely selfish, completely selfish point of view, it's a great way to take 15 steps back and punt if you're the Third Circuit. I can't deny that, absolutely. All right. But I would submit, Your Honor, that if you were to give that construction, you would read out the where appropriate language in 1614B, and you would apply Title 28... I understand what the arguments are. And you've briefed it, and the government's briefed it as well, and they've both briefed it very clearly. All right. If no further questions... No, I don't. I would ask that a transcript be prepared of this oral argument, and I would ask that the government, federal government, pay for that, if you would, please. Just coordinate with the clerk's office. Thank you for your time. Thank you for all counsel. It's a complex matter, and we'll take the matter under advisement and call the next case.